**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| TRAXCELL TECHNOLOGIES, LLC,<br><br>　　Plaintiff,<br><br>　　v.<br><br>HUAWEI TECHNOLOGIES USA INC.,<br><br>　　Defendant. | Civil Action No.: 2:17-cv-00042-RWS-RSP<br>(Consolidated Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| TRAXCELL TECHNOLOGIES, LLC,<br><br>　　Plaintiff,<br><br>　　v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>　　Defendant. | Civil Action No.: 2:17-cv-00045-RWS-RSP<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT SAMSUNG ELECTRONICS AMERICA INC.'S
MOTION TO STRIKE AND COMPEL PLAINTIFF'S INFRINGEMENT
CONTENTIONS**

**I.     OVERVIEW**

Samsung Electronics America, Inc. ("Samsung") brings three issues to the Court that it has been unable to resolve with Plaintiff Traxcell Technologies, LLC ("Plaintiff") regarding Plaintiff's Infringement Contentions.

First, Samsung moves to strike Plaintiff's allegations asserting the dependent claims of the patents-in-suit. The crux of the issue is that Plaintiff has failed to chart the elements of the dependent claims *at all*. To be sure, Plaintiff identifies the dependent claims as asserted in its cover document to the Infringement Contentions. But while Plaintiff provides element-by-element charts for the independent claims, it does not provide the same for the dependent claims. Instead, Plaintiff merely parrots the dependent claims, with embedded references to "exhibits" that contain hundreds of products without any reference to which product(s) — much less how the product(s) — meet the *additional elements* in the dependent claims.

This is not an issue of form over function. Samsung is not requiring charts for the sake of charts. The problem is that the information/disclosure required under P.R. 3-1(c) was not provided (in any form). Samsung raised this issue with Plaintiff within nine days of receiving the Infringement Contentions. Samsung also asked for an explanation of good cause as to why the Infringement Contentions, as originally served, did not contain the disclosure. Plaintiff's position has been, and continues to be, that it has provided what is required and no amendment is necessary. As Plaintiff has failed to provide the disclosure required by P.R. 3-1(c) and has no good cause for its failure, Samsung requests that the Court strike the dependent claims as alleged against Samsung.

Second, Plaintiff has failed three times to provide information regarding the means-plus-function claim elements governed by Section 112(6) in the asserted claims. Plaintiff's Infringement Contentions, as originally served, entirely ignored the requirement (first chance).

Samsung pointed this issue out to Plaintiff and gave it an opportunity to amend/supplement. Plaintiff subsequently provided a "supplement" for elements in claims 1 and 12 of U.S. Patent No. 8,977,284 (the "'284 patent"), but again did not provide the required information (second chance). Specifically, Plaintiff did not, as required by P.R. 3-1(c), identify any structures, acts, or materials *in the Accused Instrumentalities* that allegedly perform any function of these claims. Instead, Plaintiff provided what appears to be the purported support from the specification of the '284 patent for the means-plus-function elements.

After receiving the "supplement," Samsung again pointed out that Plaintiff's disclosure did not meet the plain requirement of P.R. 3-1(c). Samsung also noted that Plaintiff's actions can no longer be excused by either ignorance of the requirement or negligence. Plaintiff responded by stating they provided what Samsung asked for (they did not). (third chance). We are now over a month after the information should have been served, with a second bite of the apple already taken, and without good cause given as to why the information was not provided in the first instance. Accordingly, Samsung requests that the Court strike Plaintiff's infringement allegations as to claims 1 and 12 of the '284 patent. Samsung notes that striking these claims would effectively strike all the claims of the '284 patent from the case as claims 1 and 12 are the only independent claims. While the result may appear severe, they are a consequence of Plaintiff's refusal to comply with the clear requirements of P.R. 3-1(c).

Third, Plaintiff carries over its "mix-and-match"/shotgun approach from the Complaint to the Infringement Contentions, failing to specify exactly what product is being accused or how that product infringes. For example, Plaintiff references "exhibits" in its element-by-element claim charts, and the exhibits in turn list more than 800 allegedly infringing "products." The exhibits are further linked together by the words "and/or the like…" making it impossible to

determine scope of what is contended to infringe. In order to understand what is being accused, Samsung moves to compel Plaintiff to provide: (1) claim charts that identify how each claim reads on a specific product or specific combination of products; (2) disclosures showing where each element of each asserted claim is found within the specific accused instrumentality; and (3) Plaintiff's contention as to how the products listed in the exhibits (*i.e.*, that are not specifically charted) are technically and functionally identical to the charted product(s).

## II. FACTUAL BACKGROUND

Plaintiff served its Infringement Contentions on July 12, 2017. The following week, on July 21, Samsung sent a letter to Plaintiff noting certain deficiencies in the Contentions. Ex. 1 (July 21, 2017 J. Park Letter). On August 1, the Parties met and conferred on the issues in Samsung's letter. Subsequent to the meet-and-confer, Plaintiff stated that it would "add function and structure for the alleged means language used in the patents" but, as to the remaining deficiencies, Plaintiff's counsel said that "[w]e . . . believe that we have correctly charted all claims [*sic*] elements." Ex. 2 (Aug. 1, 2017 W. Ramey Email).

On August 3, Samsung sent a letter memorializing the meet-and-confer and seeking certain confirmations regarding Plaintiff's positions on the issues, as well as clarification on Plaintiff's email response. Ex. 3 (Aug. 3, 2017 J. Park Letter). Plaintiff did not respond to the specific issues in Samsung's letter. Instead, on August 9, Plaintiff provided a "supplemental" disclosure. Ex. 4 (Plaintiff's Supplemental Disclosure). In the supplemental disclosure, Plaintiff contended that elements of claims 1 and 12 of the '284 patent were governed by Section 112(6), and provided what it stated was its further disclosure under P.R. 3-1(c). *Id*. On the same day, Plaintiff also stated in an email that while they believed "that it is not necessary" they would be "willing to serve enhanced charts for the dependent claims." Ex. 5 (Aug. 9, 2017 W. Ramey Email).

On August 10, Samsung responded to the supplement and email, noting, among other things, that Plaintiff's disclosure of claim elements governed by Section 112(6) was clearly deficient and that there was a fundamental disagreement regarding the dependent claims. Ex. 6 (Aug. 10, 2017 J. Park Letter). In the same letter, Samsung advised Plaintiff that Samsung would seek the Court's guidance on issues where the parties were at an impasse. Ex. 6 (Aug. 10, 2017 J. Park Letter). Plaintiff wrote on August 16, recycling issues already discussed by the parties and stating, in pertinent part, that as to the issue of the means plus function language, "we supplied what you requested" and asserted that Samsung is now "changing [its] position." Ex. 7 (Aug. 16, 2017 W. Ramey Email).

### III. ARGUMENT

#### A. Plaintiff Has Failed To Provide Element-by-Element Charts For Any Dependent Claims.

There are four parts to Plaintiff's Infringement Contentions. The first is the cover document. The second is labeled Claim Charts. The third comprises exhibits to the Claim Charts. And the fourth is attachments, which appear to be additional information about certain products in the Claim Charts and exhibits.

As noted above, pursuant to P.R. 3-1(a), Plaintiff asserts in its cover document infringement of all claims of each patent-in-suit, including all dependent claims. Ex. 8, (TRX006626-30) at TRX006626-7. In the same cover document, Plaintiff refers to the charts and exhibits for its P.R. 3-1(b) and (c) disclosures. *Id.* at TRX006627.

Although the Claim Charts list all the claims (*e.g.*, as part of the title and in reciting the claim elements), only the independent claims are charted on an element-by-element basis. For example, in the Claim Chart for Claims 1-5 of U.S. Patent 9,642,024 (the "'024 patent"), claims 1-5 are listed. Ex. 9 (TRX003390-503) at TRX003392-94. However, only independent claim 1

is charted. *Id.* at TRX003400 *et seq*. Clearly, Plaintiff was aware that the rules require such element-by-element claim charts. It just chose not to chart any of the dependent claims.

As to the dependent claims, as noted above, Plaintiff merely parroted the claim language, adding embedded references to exhibits, illustrated for Claim 2 of the '024 patent below:

> Claim #2: The system of claim 1, wherein the computer **(exhibit C)** further determines the at least one suggested corrective action in conformity with a value of the error code.

Ex. 9 at TRX 0003393 (emphasis added). As noted above, exhibit C lists hundreds of products — but the core issue is that Plaintiff's disclosure says nothing about the "further" element in the dependent claim. Accordingly, the issue is not of sufficiency, but that Plaintiff did not even attempt to chart the additional elements in the dependent claims to *any* feature of accused products—failing to comply with both P.R. 3-1(b) and (c).

Samsung flagged this deficiency for Plaintiff on no less than four occasions[1] and explained to Plaintiff that its failure had already prejudiced Samsung, particularly with respect to the scope of prior art searches and invalidity analyses. *See* Ex. 3 (Aug. 3, 2017 J. Park Letter) at 4. Despite this, Plaintiff's position is that it has "correctly charted all claims [*sic*] elements" (*see* Ex. 2 (Aug. 1, 2017 W. Ramey Email)) and no additional charts were necessary. *See* Ex. 5 (Aug. 9, 2017 W. Ramey Email). Plaintiff has never explained why it did not chart any dependent claims, let alone any good cause for this failure. Accordingly, the Court should strike the allegations of the dependent claims against Samsung for failure to comply with P.R. 3-1(b) and (c). *See Davis-Lynch*, No. 6:07-cv-559, 2009 WL 81874, at *5 (striking contentions where plaintiff had "no reasonable explanation for its lack of diligence"); *Computer Acceleration Corp*

---

[1] Samsung informed Plaintiff in the July 21, Aug. 3, and Aug. 10, 2017 letters, and during the Aug. 1, 2017 meet-and-confer.

*v. Microsoft Corp.*, 503 F. Supp. 2d 819, 825 (E.D. Tex. 2007) (striking contentions where plaintiff "was on notice of the rules, had plenty of time to comply, and had sufficient information to file a proper infringement contention and chart").

Moreover, to the extent Plaintiff argues that infringement of the dependent claims is no different from that of the independent claims (such that it does not have to provide additional charts) ignores the canons of claim differentiation between independent and dependent claims. In addition, if Plaintiff's position is that the dependent claims are somehow the same (with respect to infringement) as the independent claims and so no additional charts are needed, then there is no reason that the dependent claims should remain in the case because they would rise and fall with the independent claims.

### B.      Plaintiff Failed To Comply With 3-1(c) As To Means-Plus-Function Claims.

In the cover to the Infringement Contentions, Plaintiff actually underlines the requirement regarding claim elements governed by Section 112(6):

> III.    **P.R. 3-1(c) Infringement Claims Chart**
>
> "A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality, **including for each element that such party contends is governed by 35 U.S.C. § 112(6),** the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function"

Ex. 8 at TRX006627. Yet despite this, Plaintiff provided no such disclosure with its Infringement Contentions. Samsung pointed out this deficiency to Plaintiff, and further reminded Plaintiff that the rule requires Plaintiff to provide "the identity of the structure(s), act(s), or material(s) *in the Accused Instrumentality* that performs the claimed function." P.R. 3-1(c) (emphasis added); *see also* Exs. 1 and 3 (July 21 and Aug. 3, 2017 J. Park Letters). In response to Samsung's letters on the issue and the parties' meet-and-confer efforts, Plaintiff provided supplemental disclosures for claims 1 and 12 of the '284 patent for the element "means

for receiving said performance data." Ex. 4 (Plaintiff's Supplemental Disclosures). Plaintiff provided what it purports is support in the specification of the '284 patent, but it still failed to comply with P.R.3-1(c) by not identifying what in the accused products allegedly performs that function. *See id.*

Within a day of Plaintiff's supplement, Samsung again informed Plaintiff that its disclosure was deficient by not providing the "identity of the structure(s), act(s), or material(s) *in the Accused Instrumentality* that performs the claimed function." *See* Ex. 6 (Aug. 10, 2017 J. Park Letter) at 2 (emphasis in original). In an email on August 16, Plaintiff stated that they "did not believe that it applied when we originally submitted our IC" but stood by its current disclosure and stated that "we supplied what you requested." (Ex. 7, Aug. 16, 2017 W. Ramey Email).[2]

These repeated failures cannot be excused. There was no good cause for Plaintiff's initial failure. And even when Samsung gave Plaintiff the opportunity to correct the issue Plaintiff again ignored the rule's requirements. Also, as with the dependent claims, this is not an issue of sufficiency or that Plaintiff was ignorant of the Rules. Plaintiff, for some unknown reason (as it has not provided one) decided not to provide the information. Such disregard for the rules of the Court is not only inexplicable, but has already prejudiced Samsung's ability to prepare its defenses. As Plaintiff brought suit in this district, the consequences of not complying with the rules should have been clear to the Plaintiff.

Samsung understands that striking claims is an extreme remedy and striking these particular claims will essentially strike one of the three patents-in-suit in its entirety. But

---

[2] In addition, even though the rule is clear, and Samsung repeatedly emphasized the requirement that Plaintiff must identify the structure/act/material *in the Accused Instrumentality*, Plaintiff stated that Samsung is now "changing [its] position." *Id.*

Plaintiff has already been given multiple chances and even with notice of its continued failure, has done nothing to correct the issue. Plaintiff has not come to the Court seeking leave nor has it even approached Samsung again. Plaintiff has put the onus on Samsung to seek the Court's assistance to enforce the rules — resulting in this motion. Plaintiff should not expect that it can ignore the rules (multiple times) and still always get another chance. *See Computer Acceleration Corp.*, 503 F. Supp. 2d at 825 ("Allowing such a scanty and inadequate infringement contention to stand would deter neither game-playing nor actual violation of the rules — to the contrary it would actually discourage the voluntary exchange of information."); *see also Davis-Lynch*, No. 6:07-cv-559, 2009 WL 81874, at *4 (same, and further noting that striking a portion of plaintiff's contentions would "not result in dismissal of [plaintiff]'s case in its entirety" as the case would "still proceed against the three products [plaintiff] has accused in its current [infringement contentions]").

### C. Plaintiff Fails to Properly Identify and Chart the Accused Instrumentalities.

As noted above, Plaintiff's Infringement Contentions are made up of four parts: (1) a cover document; (2) "Claim Charts"; (3) four separate exhibits to the Claim Charts[3] (which "bucket" over 800 products/parts/things[4] into four "categories"); and (4) attachments (which appear to be information regarding certain products/parts/things identified in the Claim Charts and exhibits).[5]

---

[3] Except that the '024 Claim Charts have only three exhibits — they exclude exhibit D. *Cf.* Ex. 10, exhibit D from Claims Chart for claim 1-3 of U.S. Patent No. 9,510,320 (TRX004189-291) at TRX004289-91.

[4] As discussed below, it is sometimes not clear that the "products" in the exhibits are actual products at all.

[5] The Infringement Contentions are voluminous, but the volume is indicative of Plaintiff's "kitchen sink—let's see what sticks" approach as opposed to the quality of the information. In addition, the volume, in part, is caused by the repetition of what appear to be the same exhibits

Footnote continued on next page

As to the Claim Charts, Plaintiff provided them in two categories: One set against Samsung's Operations and Management solutions/Self-Optimizing Network solutions ("OMS/SON") and the other against Samsung's WLAN solutions.

So far, so good. The issues begin when one starts to examine what is provided in the element-by-element charts and the exhibits.[6]

1. **Plaintiff's Grab Bag/Shotgun Approach To The Claim Charts Does Not Provide Notice As To What Actually Infringes.**

The OMS/SON charts illustrate this issue. For example, for the chart for claim 1 of the '024 patent (Ex. 9), Plaintiff prefaces the element-by-element claim chart with the following disclosure:

**Potential Infringing Product(s) and Service(s):**

| Operations and Management solutions |
| --- |
| (Self-Optimizing Network solutions) |
| ➢ Smart SON |
| ➢ Smart Scheduler |
| ➢ CognitiV Analytics |

http://www.samsung.com/global/business/networks/solutions/solutions/operations-and-management/

**Related Product(s) that include any or any combination of the aforementioned solutions:**

| |
| --- |
| ➢ Samsung's LTE solutions |
| ➢ Smart LTE |
| ➢ Smart Networks |
| ➢ High Density Cell Solutions |
| ➢ LTE-Advanced network solution |
| ➢ LTE-FDD network solutions |
| ➢ LTE-TDD network solutions |
| ➢ C-RAN; C-RAN 2.0 |

---

Footnote continued from previous page

(A, B, C, and D) with the charts. *See* Exs. 1 and 3 (July 21 and Aug. 3, 2017 J. Park Letters) (seeking confirmation of the identical nature of the exhibits across the charts). Given the volume (and repetition), Samsung has not filed the entirety of the Infringement Contentions but provides illustrative examples as Exhibits to this motion.

[6] As noted above, element-by-element charts are only provided for the independent claims. That is, claims 1, 6, 11, and 17 of the '024 patent, claims 1 and 12 of the '284 patent, and claims 1 and 12 of the '320 patent.

Ex. 9 at TRX 003399. The language here regarding "any or any combination" is not particularly problematic as it can be understood to say that as long as a product contains **any one** of the three products named in the table (*i.e.*, Smart SON, Smart Scheduler, or CognitiV Analytics), Plaintiff believes it infringes.

There is an immediate problem, however, when turning to the element-by-element chart itself. Here, Plaintiff appears to be alleging that the accused products are **not** just the three identified products, but apparently everything in exhibit C (as well as exhibits A and B):

| S.No. | Element of Claim #1 | Corresponding aspects in use by/marketed by M/S Samsung | |
|---|---|---|---|
| 1. | A system including one or more radio-frequency transceivers (exhibit A) and an associated one or more antennas to which the radio-frequency transceiver (exhibit A) is coupled, wherein the one or more radio- | Explanation of Manner of use by the potential infringer | Samsung's solutions – Smart SON, Smart Scheduler and CognitiV Analytics (exhibit C) - are designed to monitor, manage, optimize and troubleshoot the client's wireless cellular telecommunication network in real or near real-time.<br>A typical wireless cellular telecommunication network serviced by Samsung's solutions (Smart SON, Smart Scheduler and CognitiV Analytics) (exhibit C) comprises a plurality of RF transceivers or base stations (exhibit A) – eNodeBs, small cells, micro cells and macro cells – communicating wirelessly through RF signals with a plurality of mobile wireless communication devices (exhibit B) like mobile phones, PDAs, laptops, tablets and mobile navigation devices etc.<br>The said base stations invariably contain one or more antennae. |

Ex. 9 at TRX003400 (highlighting in original). The introduction to the charts directed to WLAN products are different (*see* Ex. 11, TRX004433-574 at TRX004448), but the element-by-element charts have the same references to the exhibits. *See id.* at, *e.g.*, TRX004450.

Taking each exhibit in turn, exhibit C is a purported list of "Wireless Network Control Systems & Components". Ex. 9 at TRX003478-503.[7] Plaintiff provides no explanation of how the 357 products/things on the list relate to each other, much less how they relate to the three products specifically identified in the chart (*e.g.*, Smart SON, Smart Scheduler, or CognitiV Analytics). In addition, on inspection, it quickly becomes evident that: (1) items on the list

---

[7] A seemingly identical exhibit C in the WLAN charts is a purported list of "Samsung WLAN solution". Ex. 11 at TRX004548-573.

include webpages for third-party vendors that list more items[8]; (2) items link to dead pages[9]; or (3) items do not, on their face, appear to be relevant to the element in the claim that Plaintiff associates with the item.[10] While the items in exhibits A and B have a bit more obvious connection — at least within each exhibit (*e.g.*, exhibit B appears to list, at least generally, "Wireless Communication Devices"), the exhibits still do not explain what products Plaintiff is accusing of being combined to cause infringement. *See* Ex. 9 at TRX003446-48 (exhibit A); and at TRX003449-77 (exhibit B). Instead, Plaintiff ends each exhibit with the note "and/or the like…" leaving open an almost infinite number of possible combinations.[11]

Ultimately, even if the items in each exhibit were all in an identifiable class (they are not) the fundamental issue remains that Plaintiff does not actually provide notice of *any particular* product(s) that infringe. Using this grab bag/shotgun approach of exhibits, it is not possible to determine exactly what is accused of infringing.[12] *See, e.g., ConnecTel, LLC v. Cisco Systems, Inc.*, 391 F. Supp. 2d 526, 527-28 (E.D. Tex. 2005) (finding insufficient under P.R. 3-1(c) "shotgun accusations" in four charts, broken into the generic categories of routers, switches, gateways/other products, and software, provided for the over 100 accused products); *see also Geovector Corp. v. Samsung Electronics Co., Ltd.*, No. 16-cv-2463, 2017 WL 76950, at *4 (N.D. Cal. Jan. 9, 2017) (explaining that, under N.D. Cal.'s comparable P.R. 3-1(c), "[a] plaintiff does

---

[8] *E.g.*, Ex. 9 (exhibit C) at TRX003478 no. 4 on the list (https://www.chicagotech.com/products/samsung/gbe)—a third party webpage listing product numbers.

[9] *E.g.*, Ex. 9 (exhibit C) at TRX003479 at no. 7 on the list (https://www.scribd.com/document/23148397/2014-02-Samsung-lte-B4G-Standardization)—a dead page.

[10] *E.g.*, Ex. 9 (exhibit C) at TRX003479 at no. 15 on the list ("ACEMAP AIR FILTER").

[11] Exhibit D, purporting to list items that Plaintiff says are a "Second Computer Coupled To First Computer With Access Flag," suffers the same deficiencies as exhibits A, B, and C. *See* Ex. 10 TRX004289-91(exhibit D).

[12] The same issue occurs in the WLAN charts. *See, e.g.*, Ex. 11 at TRX004450.

not satisfy this requirement by mixing and matching between different accused products in its claim charts, as infringement cannot be shown by a muddled hash of elements from different products") (internal marks and citations omitted).

2.  **Plaintiff's Grab Bag/Shotgun Approach Also Results In A Failure To Provide Notice As To Where Each Element Of Each Asserted Claim Is Found Within Each Accused Instrumentality.**

By referring generally to the exhibits in the element-by-element claim charts, Plaintiff fails to provide specificity as to where a claim element can be found in the accused product (or products for that matter). For example, in the OMS/SON claim chart for claim 1 of the '024 patent, element 2 requires a computer "programmed to locate the one or more mobile communication devices and generate an indication of a location of the one or more mobile wireless communication devices."[13] Ex. 9 at TRX003405. For the element, Plaintiff contends: "The collected data includes user (UE) (exhibit B) location information." *Id*. (highlighted by Plaintiff in blue below):

| S.No. | Element of Claim #1 | | Corresponding aspects in use by/marketed by M/S Samsung |
|---|---|---|---|
| 2. | The said system further including a computer (exhibit C) coupled to the one or more radio-frequency transceivers (exhibit A) programmed to locate the one or more mobile wireless communications devices (exhibit B) and generate an indication of a location of the one or more mobile wireless communications devices (exhibit B). | Explanation of Manner of use by potential infringer | Samsung's client wireless cellular telecom network's Operations Support System (OSS) containing a **computer/processor or an interconnected network of computers/processors containing** Samsung's solutions, namely Smart SON, Smart Scheduler and CognitiV Analytics, constitutes the "Computer" (exhibit C).<br><br>The Smart Scheduler (exhibit C) controls all cells as virtually one cell, or in other words centralizes radio resources management, in order to improve the allocation pattern, mitigate interference and maximize throughput.<br><br>CognitiV Analytics (exhibit C), is a real-time data processing tool that collects and analyzes data from various sources, including both network elements and user device data, to provide analytics on network, service and users. The collected data includes user (UE) (exhibit B) location information.<br><br>Smart SON (exhibit C) can use real-time RF information from the Smart Scheduler (exhibit C) and network and service analysis from CognitiV Analytics (exhibit C) to command eNodeB's transmit power or antenna (exhibit A) tilting angle instantly. |
| | | Evidence | 1) Figs. 4, 5 & 6; 2) Attachments #3 & #4. |

---

[13] Samsung refers to the claim "elements" in the way Plaintiff has divided them in the Infringement Contentions.

As noted above, however, exhibit B is just a list of "Wireless Communication Devices." Accordingly, there is no disclosure of what, *e.g.*, Plaintiff contends is the "indication of a location" in the products/items in exhibits B or C.

### 3. Plaintiff Must Provide A Connection Between What Is Charted And What Is In The Exhibits.

Once Plaintiff identifies (i) a specific product/configuration *and* (ii) where each claim element occurs within that product/configuration, Plaintiff must then explain how *other* products are technically and functionally identical to the products in the charts. *UltimatePointer, LLC v. Nintendo Co., Ltd.*, Nos. 6:11-cv-496, 6:11-cv-571, 2013 WL 12140173, at *3 (E.D. Tex. May 28, 2013) ("To designate and chart only an exemplar accused infringing product, Plaintiff must provide an explanation of the technical and functional identity of the products represented."). To the extent Plaintiff asserts products outside those that are (or will be) specifically charted, Samsung respectfully asks the Court to compel Plaintiff to provide this additional information.

## IV. CONCLUSION

For the foregoing reasons, Samsung respectfully requests that the Court issue an Order:

(1) striking all dependent claims as alleged against Samsung;

(2) striking Plaintiff's infringement allegations against Samsung as to claims 1 and 12 of the '284 patent; and

(3) compelling Plaintiff to provide Samsung with:

  (a) claim charts that identify how each claim reads on a specific product or specific combination of products;

  (b) claim charts showing where each element of each asserted claim is found within the specific accused instrumentality; and

(c) Plaintiff's contention as to how the products listed in the exhibits (*i.e.*, that are not specifically charted) are technically and functionally identical to the charted product(s).

| | | |
|---|---|---|
| Dated: August 17, 2017 | By: | */s/Jin-Suk Park* |

    Jin-Suk Park
    Matthew M. Wolf (Lead)
    Patrick C. Reidy
    J. Christopher Moulder
    Arnold & Porter Kaye Scholer LLP
    601 Massachusetts Ave., NW
    Washington, DC  20001-3743
    Tel. (202) 942-5000
    Fax (202) 942-5999

    Ryan M. Nishimoto
    Arnold & Porter Kaye Scholer LLP
    777 S. Figueroa Street, 44th Floor
    Los Angeles, CA  90017-5844
    Telephone: (213) 243-4000
    Facsimile: (213) 243-4199

    -and-

    Melissa Smith (TX Bar No. 24001351)
    Gillam & Smith LLP
    303 South Washington Avenue
    Marshall, TX  75670
    Telephone +1 903.934.8450
    Facsimile:  (903) 934-9257
    Email:  Melissa@gillamsmithlaw.com

    *Attorneys for Samsung Electronics America, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on August 17, 2017, per Local Rule CV-5(a)(3).

*/s/Jin-Suk Park*
Jin-Suk Park

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel has complied with the meet and confer requirement of Local Rule CV-7(h) and that the motion is opposed. Counsel for Defendant Samsung Electronics America, Inc., conferred in good faith with counsel for Plaintiff on multiple occasions as outlined in this motion. The parties reached an impasse, leaving an open issue for the Court to resolve.

*/s/ Melissa R. Smith*
Melissa R. Smith