**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| TRAXCELL TECHNOLOGIES, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>Huawei Technologies USA Inc.,<br><br>    Defendant. | Civil Action No.: 2:17-cv-00042-RWS-RSP<br><br>(Consolidated Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| TRAXCELL TECHNOLOGIES, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>NOKIA SOLUTIONS AND NETWORKS OY and NOKIA SOLUTIONS AND NETWORKS US LLC,<br><br>    Defendants. | Civil Action No.: 2:17-cv-00044-RWS-RSP<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS NOKIA SOLUTIONS AND NETWORKS OY AND NOKIA SOLUTIONS AND NETWORKS US LLC'S MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS AND IMPOSE SANCTIONS**

Defendants Nokia Solutions and Networks Oy and Nokia Solutions and Networks US LLC ("NSN") hereby respectfully move to strike Plaintiff Traxcell Technologies, LLC's ("Traxcell") infringement contentions relating to U.S. Patent Nos. 8,977,284 ("the '284 patent"), 9,510,320 ("the '320 patent") and 9,642,024 ("the '024 patent"), and to dismiss Traxcell's claims with prejudice as a sanction for Traxcell's repeated violation of the Court's orders and the Patent Rules.

## I.   INTRODUCTION

On July 12, 2017, Traxcell served NSN with its original infringement contentions. Those contentions were deficient because (1) they failed to chart any dependent claims – they simply listed the dependent claims; (2) they did not identify the specific products that allegedly infringe or where each element of each asserted claim was found within each product; (3) they provided no identification of the structure related to the function for the means-plus-function claims that they alleged infringed; and (4) they accused many products completely irrelevant to infringement, and many more not even made or controlled by NSN. (*See* Dkt. 99 (NSN Motion to Strike).) NSN subsequently filed its motion to strike Traxcell's infringement contentions due to the deficiencies listed above. (Dkt. 99 (Motion); Dkt. 107 (Reply).) On November 14th, the Court granted NSN's first motion to strike, stating that "the local rules require, among other things, an identification of each accused product alleged to fall within the scope of the claims, and for each claim, a chart identifying where each element of each asserted claim is found within the accused product." (Dkt. 110 at 1.) The Court ordered Traxcell to "serve supplemental infringement contentions that fully comply with the local patent rules within twenty days of this Order" and noted that "[i]f Traxcell continues to fail to comply with the local patent rules, the Court will consider any motion to dismiss." (*Id.*)

2

NSN subsequently moved to strike Traxcell's supplemental infringement contentions due to (1) Traxcell's failure to provide supplemental infringement contentions that comply with P.R. 3-1 as ordered; (2) Traxcell's new assertion of all dependent claims of all three patents-in-suit, which Traxcell had previously dropped (Dkt. 58); and (3) Traxcell's disregard for the Court's order striking the '284 patent from the case (Dkt. 110). After a three hour hearing on December 20, 2017, the Court granted NSN's second motion to strike, but provided Traxcell "one last opportunity" to submit infringement contentions that comply with the Patent Rules. (Dkt. 142 at 11-12.)

Because Traxcell's third set of infringement contentions remain deficient—in ways that this Court specifically addressed in its multiple orders, that it addressed during the December hearing, and that NSN has repeatedly raised since Traxcell's July 2017 original set of contentions—NSN requests that the Court strike Traxcell's infringement contentions and dismiss its claims with prejudice.

## II.   LEGAL STANDARD

The Court has extensive powers under Federal Rule of Civil Procedure 37 to sanction a party for discovery abuses. *FURminator, Inc. v. PetVac Group, LLC*, No. 2:08-cv-338-TJW, 2011 WL 3439309, at *5 (E.D. Tex. Aug. 5, 2011). Rule 37 permits the Court to issue orders "(iii) striking pleadings in whole or in part" and "(v) dismissing the action or proceeding in whole or in part" as a sanction for "not obeying a discovery order." Fed. R. Civ. P. 37(b)(2)(A). The Court may also sanction a party or its counsel that "fails to obey a scheduling or other pretrial order" pursuant to the Court's inherent power. Fed. R. Civ. P. 16(f)(1)(C). The Court can consider various factors in deciding whether to issue discovery sanctions, including unfair prejudice, the length and reason for delay, the importance of the particular matter, and whether

3

the offending party was diligent. *See Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007). The Federal Circuit has recognized that the district court is in the best position to assess appropriate discovery sanctions, including striking infringement contentions. *See O2 Micro Int'l v. Monolithic Power Sys., Inc.,* 467 F.3d 1355, 1363 (Fed. Cir. 2006); *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 647-49 (Fed. Cir. 1994).

**III.    ARGUMENT**

The Court's most recent order striking Traxcell's infringement contentions noted that to-date, Traxcell's contentions have been deficient because they "are an unintelligible maze" including "cross-references to summaries allegedly explaining what the asserted claims require and the accused products include." (Dkt. 142 at 8.) Further, the Court observed that "Traxcell's infringement contentions make it impossible for a defendant to determine the theory of infringement with any certainty" because Traxcell provides "no clear linkage" between the asserted claims and the accused products. (*Id.*) The Court also held that Traxcell's infringement contentions "do not chart each accused product or otherwise identify how each accused product is technically or functionally equivalent to a charted product." (*Id.*) These and other deficiencies that the Court identified in its Order persist in Traxcell's newest set of infringement contentions.

    **A.    Traxcell's Infringement Contentions Fail to Link the Claim Elements to the Accused Products**

Traxcell reformatted its most recent set of infringement contentions to eliminate nearly all of the highlighting that marred its previous sets of contentions. The issue with its previous attempts at highlighting was not, however, the *per se* practice of highlighting to link the claim elements with the accused functionality. Instead, as the Court noted, the issue was that Traxcell's highlighting was haphazard and provided no guidance to NSN regarding Traxcell's infringement theories: "The claims are set out, and much evidence concerning the accused instrumentalities is

4

included, but no clear linkage is established between them." (*Id.* at 8.) Traxcell has now strayed too far in the opposite direction – providing *no* indication as to how the cited evidence is linked to any of the claim elements. For example, in the '024 patent, for the claim element "wherein the one or more radio-frequency transceivers configured for radio-frequency communication with at least one mobile wireless communications device," Traxcell cites to the following figure:

**Nokia Eden-NET Contact**

- For More information go to - SON Community Site
- Use discussion board for quick responses.
- References
    - Marketing Presentation
    - Feature Description
    - Sales & Configuration Guide

Attachment 2 (Eden-NET with iSON Manager – Nokia's new SON Roadmap) at 31.

(Ex. 1 at 18). But what about this figure is relevant to the claim element? By removing all of the (deficient) highlighting that it provided previously, Traxcell has also stripped away any "linking" analysis that the Court required in its order and that is called for by the patent rules. For the prior element of the '024 patent, Traxcell provided 17 straight pages of excerpts from Nokia documents, but does not explain how that alleged infringement evidence relates to the claims. (Ex. 1 at 1-17.) As another example of the glaring deficiencies in Traxcell's contentions, this patent element requires "at least one mobile wireless communications device." But Traxcell does not cite to *any* mobile wireless communication devices in its evidence. (*See id.*) Perhaps Traxcell's reference to a mobile wireless communication device is so indirect that NSN is unable to recognize it, but that is only another reason that Traxcell should have provided *some* linking information in its charts as ordered by the Court. This is not a minor issue—the mobile wireless communication device is a significant element in the claims—and it is not one that should come

as a surprise to Traxcell. The Court's order explicitly identified this claim element as improperly analyzed in Traxcell's prior contentions. (Dkt. 142 at 8.)

The problems identified above are pervasive. For each element, Traxcell now provides a narrative such as the following (from the previously analyzed claim element):

> Plaintiff contends each item listed on Exhibit A corresponds to this claim limitation because each Exhibit-A item is a base station having an RF transceiver whose parameters have been configured for RF communication with mobile wireless communications devices (specifically one or more of the mobile wireless communications devices identified on Exhibit B).

(Ex. 1 at 17). As discussed above, Traxcell provided no citations to any mobile wireless communication devices, including to any of those devices listed on "Exhibit B," which purportedly identifies the accused products. The same is true for "Exhibit A," which identifies a different category of accused products. Traxcell did not identify which accused products in Exhibit A are identified in its chart nor did Traxcell identify how those products would map to the claim elements. Indeed, *none* of the products listed in Exhibit A are mentioned in the chart that Traxcell provided for this element. It is unacceptable that at this stage Traxcell continues to refuse to identify the accused products in its claim charts. This, again, was an issue with Traxcell's prior contentions that the Court explicitly identified: "Traxcell's contentions do not chart *each* accused product or otherwise identify how each accused product is technically or functionally equivalent to a charted product, as required by the local patent rule." (Dkt. 142 at 9 (emphasis in original).) This is a roadblock that prevents NSN from understanding Traxcell's contentions with respect to each accused product.

### B. Traxcell's Identification of Accused Products Remains Deficient

The issues identified above are particularly acute here, where Traxcell's exhibits identify a nearly unlimited set of accused products, including "any computer made, used or sold by NSN

or Eden Rock, including a virtual computer, that is capable of RF communication with a wireless network that includes a computer loaded with [NSN software]". (Ex. 2, Ex. D to Traxcell's Infringement Contentions.) Traxcell is essentially accusing *any* computer capable of accessing a network including NSN software of infringing its patents.

By making its contentions broad enough to, apparently, cover any computer with wireless connectivity, one would assume that Traxcell would have identified at least one such device in its contentions. Traxcell has not done so. The closest that Traxcell's contentions get to identifying any specific accused product is the following statement: "a computer executing code for an application service provider, a computer associated with law enforcement, and a computer associated with a smartphone." (Ex. 2, Ex. D to Traxcell's Infringement Contentions.) "A computer associated with law enforcement" is not clear and specific enough to put NSN on notice of Traxcell's infringement theories. Is Traxcell accusing laptop computers in police cars? Computers used by officers in the police station? What is a "computer associated with a smartphone"? Does it mean a computer physically connected to a smartphone? Traxcell's infringement contentions provide no guidance as to the scope of the allegedly accused products. As the Court ordered, "there is no way for the defendants to channel discovery or prepare for claim construction without such an indication" of the specific accused products. (Dkt. 142 at 9.) Here, NSN has no guidance as to which allegedly infringing computers it must investigate to disprove Traxcell's allegations. The notion that NSN would need to take discovery of police departments to investigate Traxcell's vague and overbroad contentions is absurd.

Another related and enduring deficiency in Traxcell's contentions is the citation to accused products that are clearly not NSN's. The prime example occurs in Traxcell's Exhibit B, which accuses "any wireless communication device made, used or sold by NSN or Eden Rock

that is capable of communicating wirelessly through transmission and reception of RF signals." As an initial matter, "Eden Rock" is not a party to this case, so Traxcell should not be accusing NSN of infringing through its products. More fundamentally, the large list of cellular phones that Traxcell identifies are not made by NSN. Indeed, the website that Traxcell lists as supplying evidence for the purported NSN cell phones clearly identifies HMD as the manufacturer, and states that NSN is merely licensing its brand name to HMD.



A simple visit to the HMD website would have confirmed this.



www.hmdglobal.com. This is not a new issue. Traxcell has accused non-NSN products in each set of its infringement contentions. For example, NSN complained *last August* about Traxcell identifying non-NSN products in its contentions. (Ex. 3, 2017.08.18 Ltr fr Nelson to Ramey.) As another example, Traxell had previously identified Microsoft cellular phones as being infringed by NSN. (*See* Dkt. 99 at 4 ("For example, NSN noted that Traxcell's infringement contentions include the *'Lumia-1520'* product and cite to https://www.microsoft.com/en-us/mobile/phone/lumia1520/.") (emphasis added).) NSN asked the Court to strike Traxcell's contentions against those non-NSN products, and the Court *granted* that motion. (Dkt. 110 at 2 ("(4) Nokia's motion to strike Traxcell's infringement contentions, Dkt. No. 99, is granted.").) That order from the Court was entered on November 14th of last year. Yet, in Traxcell's newest set of contentions, it re-accuses products that NSN *specifically identified* as non-NSN products, and which the Court struck.

> Examples include, but are not limited to:Nokia 8; Nokia 6; Nokia 5; Nokia 3; Nokia 3310 Dual SIM; Nokia 150; Nokia 105; Nokia 105 Classic; Nokia 105 Dual SIM; Nokia 230 Dual SIM; Nokia 216 Dual SIM; Nokia 130 Dual SIM; old Nokia brand phones – including Lumia series, Asha series, N series, E series.

(Ex. 4, Ex. B to Traxcell's Infringement Contentions.) There is no explanation for Traxcell attempting to use its infringement contentions to turn back the clock on accused products that have already been dismissed from this case.

### C. The Infringement Contentions are Garbled and Legally Flawed

Traxcell's contentions also remain "unintelligible," preventing NSN from understanding or crystalizing Traxcell's infringement theories. (*See* Dkt. 142 at 8.) For example, in the preamble of claim 1 for the '320 patent, Traxcell provides the following analysis:

> Each combination having at least one item listed on Exhibit A, at least one item listed on Exhibit B, and at least one item listed on Exhibit C is a system (hereafter "Accused System").
> Because infringement liability is not dependent on ownership, e.g., use of a system can infringe (35 U.S.C. § 271), infringement is not dependent on ownership of all limitations of a claim.

9

(Ex. 5 at 1.) The issues with these contentions are myriad. First, Traxcell provides zero analysis of how the disparate products in each "Exhibit" should be combined to form the "Accused System." Traxcell is required to put NSN on notice of its infringement theories, so merely listing the accused products and noting that they can be combined in apparently any way or order, fails to provide the appropriate notice to NSN. Second, Traxcell accuses products in Exhibit D of satisfying this claim in the second-to-last and last elements, yet did not list Exhibit D as part of the "Accused System." Is Traxcell alleging that the "Accused System" somehow does not include those separately accused products? Third, Traxcell's statement of the law—upon which its infringement theories apparently rest—is flawed. Direct infringement of a system claim *does* require that the defendant "put the invention into service, i.e., control the system as a whole and obtain benefit from it." *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F. 3d 1320, 1328 (Fed. Cir. 2017). This misconception may explain the vast and vague scope of the products Traxcell accuses NSN of infringing.

### IV. CONCLUSION

In the Court's most recent order striking Traxcell's contentions, it identified three primary deficiencies. First, the Court held that Traxcell's contentions were "unintelligible" and prevented NSN from determining Traxcell's "theory of infringement with any certainty." (Dkt. 142 at 8.) As described above, Traxcell's contentions remain unintelligible and may now be even *more* ambiguous than the prior set. Second, the Court held that Traxcell had failed to provide a theory for how *each* claim limitation was met by the accused products. Traxcell's newest set of contentions are no improvement. Traxcell has removed the vast majority of the annotating that attempted to link the cited evidence to the language of the claims. While Traxcell's highlighting before was deficient because it was haphazard and poorly executed,

10

removing those annotations (almost) entirely, and instead having the evidence stand alone unanalyzed only worsens the problems affecting the prior set of contentions. Third, the Court held that Traxcell had failed to "chart *each* accused product or otherwise identify how each accused product is technically or functionally equivalent." (*Id.* (emphasis in original).) That issue remains. For many elements, Traxcell cited no evidence showing that the products listed in Traxcell's "Exhibits" meet the claim elements. Further, the products that it listed in its Exhibits are often too vague ("a computer associated with law enforcement") or too broad (any computer communicating with another computer running NSN software) to provide NSN any insight or guidance as to the products that it truly needs to investigate regarding infringement.

      For the foregoing reasons, NSN respectfully request that the Court issue an order striking Traxcell's infringement contentions, dismissing this case with prejudice, and awarding NSN its reasonable expenses related to this motion.

Date:  March 5, 2018

Respectfully submitted,

By:  */s/ David A. Nelson*

David A. Nelson
Nathan Hamstra
Marc Kaplan

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
191 N. Wacker Dr., Suite 2700
Chicago, IL 60606
(312) 705-7400
(312) 705-7401 (Facsimile)
davenelson@quinnemanuel.com
nathanhamstra@quinnemanuel.com
marckaplan@quinnemanuel.com

Michael E. Jones
State Bar No. 10929400
**POTTER MINTON**
A Professional Corporation
110 N. College, Suite 500
Tyler, TX  75702
(903) 597-8311
(903) 593-0846 (Facsimile)
mikejones@potterminton.com

*Attorneys for Nokia Solutions and Networks Oy and Nokia Solutions and Networks US LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on March 5, 2018, per Local Rule CV-5(a)(3).

/s/ David A. Nelson
David A. Nelson

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel has complied with the meet and confer requirement of Local Rule CV-7(h) and that the motion is opposed. Counsel for Defendants conferred in good faith with counsel for Plaintiff telephonically on February 13, 2018 and subsequently over electronic mail. As set forth above, Defendants believe that Plaintiff's infringement contentions are deficient and warrant motion practice. The parties reached an impasse, leaving an open issue for the Court to resolve.

/s/ Marc L. Kaplan
Marc L. Kaplan