UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| TRAXCELL TECHNOLOGIES, LLC., ) <br>          Plaintiff,       ) <br>                                  ) <br> v.                              ) <br>                                  ) <br>                                  ) <br> HUAWEI TECHNOLOGIES USA INC., ) <br>          Defendant.      ) <br>                                  ) | Civil Action No. 2:17-cv-00042 <br> (Lead Case) <br><br><br> JURY TRIAL DEMANDED |

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT HUAWEI TECHNOLOGIES USA, INC. REGARDING CERTAIN WRITTEN DISCOVERY RESPONSES**

**ARGUMENT**

**A. DEFENDANT SHOULD BE COMPELLED TO PROVIDE COMPLETE PRODUCTION IN RESPONSE TO CERTAIN REQUESTS FOR PRODUCTION.**

Though "it is it is not uncommon for an accused infringer to produce millions of pages of documents,"[1] here, Defendant has produced essentially zero documents related to revenue for the products identified in Plaintiff's infringement contentions.

**(1) Defendant Should Be Compelled to Provide Complete Production Regarding Accused-Instrumentalities' Monetary Information.**

In response to requests for production relating to monetary information (e.g., revenue, costs, profits, licenses, sales volume, annual reports, and financial reports) relating to the Accused Instrumentalities,[2] Defendant asserted meritless objections and failed to fully produce

---

[1] *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011) (stating, "The Federal Rules of Civil Procedure, as well as the local discovery rules and policies of a number of district courts, allow for liberal discovery, and it is not uncommon for an accused infringer to produce millions of pages of documents[.]").

[2] The precise nature of each request is set forth by the language of each request. Simply for brevity and convenience of the Court, Plaintiff refers to these requests as "requests for production relating to monetary

1

responsive documents and, instead, have produced little responsive information. The Requests include Requests Nos. 1, 2, 6–8, 11, 16–19, and 44.[3]

Defendant's objections[4] are improper general objections[5] and are also waived by their boilerplate nature.[6] Nor can Defendant carry its burden to prove the objections should be sustained. Further, the existence (here, Defendant prophylactically asserts "to the extent" the requests relate to confidentiality obligations to third parties[7]) of third-party confidentiality obligations is not a proper basis for objecting and withholding discovery.[8]

Regarding the scope of discovery, Plaintiff notes that direct-infringement liability can exist for conduct commonly associated with designing (i.e., creating a design that meets the patent claim elements);[9] licensing (i.e., licensing technology that meets the patent claim

---

information (e.g., revenue, costs, profits, licenses, sales volume, annual reports) relating to the Accused Instrumentalities." However, Plaintiff's use of such category descriptor is not intended to modify or restrict each request; each request's language sets forth its precise scope. Further, some Requests may pertain to more than one category descriptor used by Plaintiff in this Motion and though for brevity and simplicity purposes Plaintiff's Motion addresses each Request only with regards to a single category descriptor, by doing so Plaintiff does not intend to modify or limit the scope of any Request as set forth by each Request's language.

[3] *See* Declaration of William P. Ramey, III ("Ramey Decl.") at ¶ 3, Defendant Huawei Technologies USA, Inc.'s Responses and Objections to Plaintiff's First Set of Requests for Production (hereafter "RFP Responses") (Exhibit ["Ex."] 1) at 1–4.

[4] RFP Responses (Ex. 1) at 1–4.

[5] *ACMA USA, Inc. v. Surefil, LLC*, 2008 U.S. Dist. LEXIS 51636, at *5 (E.D. Va. July 7, 2008); *Anglin v. Vill. of Washington Park*, Civil No. 03-846-MJR, 2006 U.S. Dist. LEXIS 28606, at *2, *3 (S.D. Ill. May 9, 2006); *Doerge v. Crum's Enters.*, Case No. 05-1019-JTM, 2006 U.S. Dist. LEXIS 15717, at *9 (D. Kan. Mar. 7, 2006); *Koresko v. Bleiweis*, Civil Action No. 04-00769, 2004 U.S. Dist. LEXIS 19904, at *8–*10 (E.D. Pa. Sept. 27, 2004); *Biovail Corporation v. Mylan Laboratories, Inc.*, 217 F.R.D. 380, 381–83 (N.D. W.Va. 2003); *In re Aircrash Disaster near Roselawn*, 172 F.R.D. 295, 306, 307 (N.D. Ill. 1997); *Burns v. Imagine Films Ent't*, 164 F.R.D. 589, 592, 593 (W.D.N.Y. 1996).

[6] *E.g.*, *Enron Corp. Savs. Plan v. Hewitt Assocs., L.L.C.,* 258 F.R.D. 149, 159 (S.D. Tex. 2009); *Hager v. Graham.,* 267 F.R.D. 486, 498 (N.D.W. Va. 2010).

[7] RFP Responses (Ex. 1) at 3, ¶ 7.

[8] *Mike v. Dymon, Inc.,* No: 95-2405-EEO, 1996 U.S. Dist. LEXIS 21824 (D. Kan. Oct. 17, 1996); *Bd. of Trs. v. Tyco Int'l. Ltd.*, 253 F.R.D. 521 (C.D. Cal. 2008); *Robert Bosch LLC v. ADM 21 Co.*, No. 2:10-CV-1930-LRH-(LRL), 2011 U.S. Dist. LEXIS 102639 (D. Nev. Sept. 12, 2011); Stipulated Protective Order (ECF No. 38), particularly ¶¶ 1, 6, 20, 21 (addressing third-party issues); *see also* Northern District of California Patent L.R. 2-2 ("Discovery cannot be withheld on the basis of confidentiality absent Court order.").

[9] *ePlus, Inc. v. Lawson Software, Inc.*, 789 F.3d 1349, 1361 n.13 (Fed. Cir. 2015); *National Presto Indus. v. West Bend Co.*, 76 F.3d 1185, 1195 (Fed. Cir. 1996) (quoting the *Weyerhaeuser* language provided in the following citation); *Weyerhaeuser Timber Co. v. Bostitch, Inc.*, 178 F. Supp. 757, 760 (D. R.I. 1959) (stating, "And even though the grant of said license and *the delivery of said designs and patterns* [emphasis added] occurred before the

elements);[10] and testing;[11] and that indirect infringement can exist for common technology licensor conduct of designing, licensing, and supporting (e.g., providing instructions, technical consultants, technical phone support).[12]

---

date of the reissue patent, such acts would constitute infringing conduct if they were performed with intent to infringe the forthcoming reissue patent or with intent that said infringing conduct would continue after the reissue patent was granted. [Citations omitted]."); *Hewlett Packard Co. v. Papst Licensing GmbH & Co. (In re Papst Licensing GmbH & Co.)*, 767 F. Supp. 2d 1, 10 (D. D.C. 2011) (stating, " Underlying the customer-suit doctrine is the preference that infringement determinations should be made in suits involving the *true defendant, the party that controls the product's design* [emphasis added], rather than suits involving secondary parties, such as customers of the manufacturer."); *Oticon, Inc. v. Sebotek Hearing Sys., LLC*, 865 F. Supp. 2d 501, 509 (D. N.J. 2011) (stating, "[I]t is the *design* [emphasis added], . . . , and . . . of allegedly infringing products that gives rise to any infringement claim[.]"); *Symbol Techs., Inc. v. Metrologic Instruments, Inc.*, 771 F. Supp. 1390, 1403 n.11 (D. N.J. 1991)   (holding direct infringement was proper where an individual "participated in *the design of* [emphasis added] the infringing device and preparation of the sales bulletin. [Citation omitted].").

[10] *National Presto Indus. v. West Bend Co.*, 76 F.3d 1185, 1195 (Fed. Cir. 1996) (quoting the *Weyerhaeuser* language provided in the following citation); *Weyerhaeuser Timber Co. v. Bostitch, Inc.*, 178 F. Supp. 757, 760 (D. R.I. 1959) (stating, "And even though the *grant of said license and the delivery of said designs and patterns* [emphasis added] occurred before the date of the reissue patent, such acts would constitute infringing conduct if they were performed with intent to infringe the forthcoming reissue patent or with intent that said infringing conduct would continue after the reissue patent was granted. [Citations omitted]."); *Moseley v. United States Appliance Corp.*, 155 F.2d 25, 27 (9th Cir. 1946) (stating, "The *act of licensing* [emphasis added] . . . to manufacture and sell the infringing device was itself an act of infringement. [Footnoted citations omitted]. . . . The evidence shows that Keelmo Company was formed for the purpose of infringing appellee's patent *by licensing* [emphasis added] the manufacture and sale of the infringing device.").

[11] *Paper Converting Machine Co. v. Magna-Graphics Corp.,* 745 F.2d 11, 18, 19 (Fed. Cir. 1984) (stating, "[I]f the infringer has tested his embodiment of the invention sufficiently to satisfy him, this may be may be a[n] [infringing] 'use,' because [ . . . ] 'use' includes use for the purpose of testing."); *Kumar v. Ovonic Battery Co.*, 351 F.3d 1364, 1372–3 (Fed. Cir. 2003)  (noting in part, in denying summary judgment of non-infringement, the defendant's use by performing experiments); *Oticon, Inc. v. Sebotek Hearing Sys., LLC*, 865 F. Supp. 2d 501, 509 (D. N.J. 2011) (stating, "[I]t is the design, *implementation* [emphasis added], manufacturing, marketing, and sales of allegedly infringing products that gives rise to any infringement claim[.]").

[12] *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) (stating, "*design of* [emphasis added] infringing product may constitute active inducement" [citing  4 D. Chisum, *supra*, § 17.04[4][d], at 17-52]);*id.* (noting, as support for induced infringement finding, the defendant had "given all of the [infringing material] *formulas* [emphasis added] to" the direct infringer);  *id.* (noting, as support for induced infringement finding, the defendant had "exerted control over [direct infringer] manufacture of the infringing [materials], as the owner of the trademark POCKET PURIFIER used by [direct infringer] on its product and through license agreements. See Amendment to Agreement between William J. Gartner and Calco Ltd. of Sept. 24, 1980, at 2 (Jan. 26, 1983) ('GARTNER grants to CALCO an exclusive license to manufacture and sell the purifying straw, *the construction of which shall have been approved by Gartner* [Court's emphasis]').");  *Fromberg, Inc. v. Thornhill*, 315 F.2d 407, 411 n.11 (5th Cir. 1963) (stating, regarding inducing infringement, "'The following has been adjudged infringing conduct: *licensing others* [emphasis added] to use infringing machines and processes * * *; fitting machinery for operation at the purchaser's plant; * * * converting machinery or adjusting operating parts * * *; passing on information intending to bring about infringement, ( Jones v. Radio Corp. of America, 131 F.Supp. 82); *Furnishing drawings and granting license* [emphasis added] ( Weyerhauser Timber Co. v. Bostich, D.C., 178 F.Supp. 757, accused machines, Conmear Products Corp. v. Tibony, 63 F.Supp. 372); . . .' [Citation omitted].  The cited Jones v. RCA case gives a good summary of pre-1952 Code decisions as to acts inducing infringement even without sales."); *Csb-System Int'l Inc. v. SAP Am., Inc.*, No. 10-2156, 2012, U.S. Dist. LEXIS 60909; 2012 WL 1521321, at **26, 28 (E.D. Pa. Apr. 30, 2012) (stating, "Courts have found the range of infringing acts to include actions such as support

The monetary information relating to the Accused Instrumentalities are relevant and discoverable. Defendant's objections to Requests include Requests Nos. 1, 2, 6–8, 11, 16–19, and 44 should be overruled, and Defendant should be ordered to produce all responsive documents.

## B. DEFENDANT SHOULD BE COMPELLED TO PROVIDE COMPLETE ANSWERS TO CERTAIN INTERROGATORIES.

### (1) Defendant Should Be Compelled to Fully Answer Interrogatory No. 6, Which Relates to Accused-Instrumentalities' Monetary Information.

Plaintiff's Interrogatory No. 6 asks:

**INTERROGATORY NO. 6:**

For each Accused Product, state, on a product-by-product basis, the revenues received, costs incurred, and profits received, relating to sale or use in the U.S. or export from the U.S. of such product since January 1, 2010. The information should be provided at the unique product number level and may be provided on either a monthly or a quarterly basis as is likely reflected in reporting packages distributed to Defendant's management on a periodic basis in, for example, profit and loss statements or income statements, balance sheets, statements of cash flows, revenue forecasts, profit forecasts, demand forecasts, market share reports or forecasts, or similar reports. To the extent such information is not available, Defendant shall provide revenue, cost, and profit

---

services and repair. [Citations omitted]; *Symbol Techs., Inc. v. Metrologic Instruments, Inc.*, 771 F. Supp. 1390, 1405 (D.N.J. 1991) (finding that acts of repair and maintenance [ . . . ] may lead to liability for inducement; and further noting that 'conduct including *licensing* [emphasis added], repair and maintenance, instruction and advertising, *design* [emphasis added] and . . . have been sufficient to hold one liable for'" inducing infringement); *Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398, 434 (S.D. N.Y. 2011) (finding defendant "'materially contributed' to the infringement by *designing* [emphasis added], . . . , supporting, and . . . the [infringing] program. [Citations omitted]"); *ProteoTech, Inc. v. Unicity Int'l, Inc.*, 547 F. Supp. 2d 1174, 1178 (W.D. Wash. 2008) (stating, "Here, in contrast, ProteoTech alleges that Rexall had a subsidiary relationship with the company that through various acquisitions became part of the corporate entity now accused of infringing the patent ProteoTech licensed to Rexall. The case now before the Court is simply not one in which the alleged inducer had no connection to the alleged infringer, and Rexall's *'mere licensing' theory* [emphasis added] does not support dismissal of ProteoTech's claim of patent infringement."); *Alta. Telecomms. Research Ctr. v. Rambus, Inc.*, No. C-06-02595 RMW, 2006 U.S. Dist. LEXIS 81093, at **14–15 (N.D. Cal. Oct. 24, 2006) (find that pleading of product testing and other services offered along with licensor's licenses and that the technology infringed specific patent claims sufficiently met indirect patent-infringement pleading standards); *Vesture Corp. v. Thermal Solutions, Inc.*, 284 F. Supp. 2d 290, 317 (M.D. N.C. 2003) (noting that inducing infringement may be based on designing of a product).

information at the most detailed level reasonably available to Defendant.[13]

Defendant's "General Objections"[14] are improper.[15]  Likewise, Defendant's boilerplate objections[16] are waived by their boilerplate nature.[17]

The accused-instrumentalities' monetary information is relevant and discoverable. Defendant's objections to Interrogatory No. 6 should be overruled, and Defendant should be ordered to fully answer Interrogatory No. 6.

Plaintiff's e-mail of July 25, 2018 particularly lies out the damages data requested.[18]  The discovery of such information from Defendant may lead to the discovery of admissible evidence. Additionally, plaintiff is entitled to the raw data from which Defendant computes the sales data.

The information requested in the e-mail was:

> For each Accused Product, state, on a product-by-product basis, the revenues received, costs incurred, and profits received, relating to sale or use in the U.S. or export from the U.S. of such product since January 1, 2010.
>
> We have received none to date.
>
> A proper response includes revenue data for each:
>
> **FOR THE SON:**
>
> (a) any transceiver and antenna made, used, or sold by Huawei capable of RF communication with a wireless network, the network including a computer executing or loaded with Huawei's SingleSON solution;
>
> (b) any wireless communication device made, used or sold by Huawei, capable of RF communication with a wireless network, the network including a computer executing or loaded with Huawei's SingleSON solution;

---

[13] *See* Ramey Decl. at ¶ 4, Interrogatory Responses (Ex. 2) at 18.

[14] *See id.* at 2–5.

[15] *ACMA USA*, 2008 U.S. Dist. LEXIS 51636, at *5;  *Anglin*, 2006 U.S. Dist. LEXIS 28606, at *2, *3; *Doerge*, 2006 U.S. Dist. LEXIS 15717, at *9;  *Koresko*, 2004 U.S. Dist. LEXIS 19904, at *8–*10;  *Biovail*, 217 F.R.D. 380, 381–83; *In re Aircrash Disaster near Roselawn*, 172 F.R.D. 295, 306, 307;  *Burns*, 164 F.R.D. 589, 592, 593.

[16] *See* Ramey Decl. at ¶ 4, Interrogatory Responses (Ex. 2) at 18, 19.

[17] *E.g.*, *Enron,* 258 F.R.D. 149, 159; *Hager,* 267 F.R.D. 486, 498.

[18] *See* Ramey Decl. at ¶ 5, Ex. 3, July 25, 2018 e-mail from Ramey to Defendant Huawei's counsel.

(c) any computer made, used or sold by Huawei, including a virtual computer, executing or loaded with Huawei's SingleSON solution;

(d) any wireless communication device made, used or sold by Huawei, capable of RF communication with a wireless network, the wireless communication device including a processor executing or loaded with a Location-Based Service (LBS) provider application, such as Google Maps or VZ Navigator application or AT&T navigator;

(e) revenue data from the use, make or sale of Huawei's SingleSON solution; and,

(f) licenses for using, making or selling Huawei's SingleSON solution.

**FOR THE WLAN:**

(a) any transceiver and antenna made, used, or sold by Huawei capable of RF communication with a wireless network, the network including a computer executing or loaded with eSight Network Management System;

(b) any wireless communication device made, used or sold by Huawei, capable of RF communication with a wireless network, the network including a computer executing or loaded with eSight Network Management System;

(c) any computer made, used or sold by Huawei, including a virtual computer, executing or loaded with eSight Network Management System;

(d) any wireless communication device made, used or sold by Huawei, capable of RF communication with a wireless network, the wireless communication device including a processor executing or loaded with a Location-Based Service (LBS) provider application, such as Google Maps or VZ Navigator application or AT&T navigator;

(e) revenue data from the use, make or sale of eSight Network Management System; and,

(f) licenses for using, making or selling eSight Network Management System.[19]

The information requested is taken directly from Plaintiff's infringement contentions[20] and is therefore extremely relevant to Plaintiff's infringement claims.

---

[19] *See* Ramey Decl. at ¶ 5, Ex. 3, at 2–3.
[20] *See id.* at ¶ 7.

## CONCLUSION

Plaintiff requests the Court overrule Defendant's discovery objections referenced above and order Defendant to provide full production and answers to the discovery discussed above.

Respectfully submitted,

**Ramey & Schwaller, LLP**

By: /s/ William P. Ramey, III
William P. Ramey, III
Texas Bar No. 24027643
5020 Montrose Blvd., Suite 750
Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)
wramey@rameyfirm.com

**Hicks Thomas, LLP**

John B. Thomas (Co-Counsel)
Texas Bar No. 19856150
700 Louisiana Street, Suite 2000
Houston, Texas 77002
(713) 547-9100 (telephone)
(713) 547-9150 (fax)
jthomas@hicks-thomas.com

**Attorneys for Traxcell**

## CERTIFICATE OF CONFERENCE

The personal conference(s) required by L.R. CV -7 have been conducted as follows: Plaintiff Counsel William P. Ramey, III and Defense Counsel Amy LaValle conferred by emails on July 19th, 20th, 22nd, 25th, and August 24th. Also, on July 26th, those attorneys conferred by phone, including with local counsel. Agreement could not be reached because the parties could not agree on the scope of discovery and the relevance of the discovery requests.  Local counsel, Melissa R. Smith, for defendant was involved in the telephone conference and the e-mails.

The parties have continued to negotiate the requests but no further progress has been made on obtaining the requested discovery.  Exhibit 3 to the Ramey Declaration is a copy of the e-mail correspondence.

/s/ William P. Ramey, III
William P. Ramey, III

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that all counsel of record who have appeared in this case are being served today, October 1, 2018, with a copy of the foregoing via the Court's CM/ECF system.

/s/ William P. Ramey, III
William P. Ramey, III