UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| TRAXCELL TECHNOLOGIES, LLC.,   )<br>                  Plaintiff,  )<br>                              )<br>v.                               )<br>                              )<br>HUAWEI TECHNOLOGIES USA INC., )<br>                  Defendant.  )<br>                              ) | Civil Action No. 2:17-cv-00042<br>(Lead Case)<br><br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S MOTION TO COMPEL DEFENDANTS NOKIA SOLUTIONS AND NETWORKS US LLC AND NOKIA SOLUTIONS AND NETWORKS OY TO PRODUCE UNDERLYING FINANCIAL DOCUMENTS AND ITEMS**

## I.     ARGUMENT

**A.  THE LOCAL RULES REQUIRE PRODUCTION WITHOUT REQUEST**

Consistent with Eastern District of Texas General Order 14-3 ("General Order Regarding Track B Initial Patent Case Management Order") at Track B Initial Patent Case Management Order, ¶ 2 ("Initial Disclosures and Summary Sales Information"), the Court in the present case more than 16 months ago ordered the production of "all documents, electronically stored information, and tangible things . . . relevant to the pleaded claims or defenses[.]"[1] Further, the courts have repeatedly held that a patent plaintiff is entitled to not just financial summaries, but also to the *underlying* financial information.[2]

Nokia's refusal to comply with the Local rules and Plaintiff's requests is designed to raise

---

[1] August 8, 2017 Discovery Order (ECF No. 32) at ¶ 3(b).

[2] *E.g., Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-00605-PAB-KMT, 2017 U.S. Dist. LEXIS 194609, at *4–10 (D. Co. Nov. 28, 2017); *Lee Valley Tools, Ltd. v. Indus. Blade Co.*, 288 F.R.D. 254, 260 (W.D.N.Y. 2013); *Fellowes, Inc. v. Aurora Corp.*, 2009 U.S. Dist. LEXIS 38768, at *8 (N.D. Ill. Apr. 1, 2009); *see also* Eastern District of Texas General Order 14-3 ("General Order Regarding Track B Initial Patent Case Management Order") at Track B Initial Patent Case Management Order, ¶ 2.

the cost of this litigation and Nokia should be sanctioned in an amount equal to the extra attorney's fees and expert fees required to address the lack of production.

Here, Defendants have primarily relied on simply the production of financial summaries likely generated for the purposes of litigation and have failed and refused after request to produce the *underlying* financial information.[3] Further, what has been produced illustrates that there are numerous missing documents in that customer names have been produced but no invoices or order forms.[4] NOK_TRX0465556 lists several customers, but the information is attorney's eyes only.[5] This document reveals customers but no revenue production is made except limited summary production for Sprint and T-Mobile.

Thus, Defendants should be ordered to produce within 14 days of the Order all documents and items relating to financial information (including but [6]not limited to revenue, profits, costs, development costs, sales price) relating to Defendants' SON products, including associated products and services (including but not limited to products and services sold with, offered for sale with, used with, or compatible for use with Defendants' SON products), which necessarily includes invoices and order forms.

Defendants have not even produced the number of base stations licensed to use the software. However, production of the raw invoices and orders would provide the information as confirmed by Landis, Nokia's 30(b)(6) for financial matters.[7] The number of base stations licensed to use the software is how Nokia charges customers for the Eden-Net software, among other

---

[3] *See* Ex. 5, Ex. 50, NOK_TRX0454308 (filed under seal).
[4] *See* Ex. 6, Ex. 28, NOK_TRX0465556 (filed under seal).
[5] *See* Ex. 8, List of customers (filed under seal).
[6] *See* Ex. 5, NOK_TRX0454308 (filed under seal).
[7] *See* Ex. 9, Deposition of Robert Landis at 57:22-58:6 (Orders would provide unit sales price) (filed under seal).

2

charges.[8] Accordingly, such information is relevant to damages and should have been produced.

### B. DEFENDANTS SHOULD BE COMPELLED TO PROVIDE COMPLETE PRODUCTION IN RESPONSE TO CERTAIN REQUESTS FOR PRODUCTION.

Though "it is it is not uncommon for an accused infringer to produce millions of pages of documents,"[9] here, Defendants have produced essentially zero documents related to revenue for the products identified in Plaintiff's infringement contentions, except a few summary pages that provides little to no useful information. If Nokia recognized revenue, no matter how recognized, that revenue should be produced. Due to the lack of production, after Nokia does produce the information, Traxcell requests a second deposition on financial matters. The designated witness by Nokia did not even know if all of the SON revenue had been produced as he did not know what products made up SON.[10]

#### (1) Defendants Should Be Compelled to Provide Complete Production Regarding Accused-Instrumentalities' Monetary Information.

In response to requests for production relating to monetary information (e.g., revenue, costs, profits, licenses, sales volume, annual reports, and financial reports) relating to the Accused Instrumentalities,[11] Defendants asserted meritless objections and failed to fully produce responsive

---

[8] *See* Ex. 7, Eden Net Pricing Strategy at pp. 8-17 (filed under seal).

[9] *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011) (stating, "The Federal Rules of Civil Procedure, as well as the local discovery rules and policies of a number of district courts, allow for liberal discovery, and it is not uncommon for an accused infringer to produce millions of pages of documents[.]").

[10] *See* Ex. 9 at 39:12-18.

[11] The precise nature of each request is set forth by the language of each request. Simply for brevity and convenience of the Court, Plaintiff refers to these requests as "requests for production relating to monetary information (e.g., revenue, costs, profits, licenses, sales volume, annual reports) relating to the Accused Instrumentalities." However, Plaintiff's use of such category descriptor is not intended to modify or restrict each request; each request's language sets forth its precise scope. Further, some Requests may pertain to more than one category descriptor used by Plaintiff in this Motion and though for brevity and simplicity purposes Plaintiff's Motion addresses

3

documents and, instead, have produced little responsive information. The Requests include Requests Nos. 1, 2, 6–8, 11, 16–19, and 44.[12]

Defendants' "General Objections"[13] are improper.[14] Likewise, Defendants' boilerplate objections[15] are waived by their boilerplate nature.[16] Nor can Defendants carry their burden to prove the objections should be sustained. Further, the existence (here, Defendants assert there "may" be confidentiality obligations to third parties) of third-party confidentiality obligations is not a proper basis for objecting and withholding discovery.[17]

Regarding the scope of discovery, Plaintiff notes that direct-infringement liability can exist for conduct commonly associated with designing (i.e., creating a design that meets the patent claim

---

each Request only with regards to a single category descriptor, by doing so Plaintiff does not intend to modify or limit the scope of any Request as set forth by each Request's language.

[12] *See* Declaration of William P. Ramey, III ("Ramey Decl.") at ¶3, Defendant [sic] Nokia Solutions and Network Oy's Responses to Plaintiff's First Set of Requests for Production (hereafter "RFP Responses") (Exhibit ["Ex."] 1) at 6–8, 11–13, 15, 16, 19–22, 44, 45.

[13] RFP Responses (Ex. 1) at 3–6.

[14] *ACMA USA, Inc. v. Surefil, LLC*, 2008 U.S. Dist. LEXIS 51636, at *5 (E.D. Va. July 7, 2008); *Anglin v. Vill. of Washington Park*, Civil No. 03-846-MJR, 2006 U.S. Dist. LEXIS 28606, at *2, *3 (S.D. Ill. May 9, 2006); *Doerge v. Crum's Enters.*, Case No. 05-1019-JTM, 2006 U.S. Dist. LEXIS 15717, at *9 (D. Kan. Mar. 7, 2006); *Koresko v. Bleiweis*, Civil Action No. 04-00769, 2004 U.S. Dist. LEXIS 19904, at *8–*10 (E.D. Pa. Sept. 27, 2004); *Biovail Corporation v. Mylan Laboratories, Inc.*, 217 F.R.D. 380, 381–83 (N.D. W.Va. 2003); *In re Aircrash Disaster near Roselawn*, 172 F.R.D. 295, 306, 307 (N.D. Ill. 1997); *Burns v. Imagine Films Ent't*, 164 F.R.D. 589, 592, 593 (W.D.N.Y. 1996).

[15] *See* Ramey Decl. at ¶3, RFP Responses (Ex. 1) at 6–8 (responses to Requests Nos. 1–2), 11–13 (responses to Requests Nos. 6–8), 15–16 (response to Request No. 11), 19–22 (responses to Requests Nos. 16–19), 44–45 (response to Request No. 44).

[16] *E.g.*, *Enron Corp. Savs. Plan v. Hewitt Assocs., L.L.C.,* 258 F.R.D. 149, 159 (S.D. Tex. 2009); *Hager v. Graham.,* 267 F.R.D. 486, 498 (N.D.W. Va. 2010).

[17] *Mike v. Dymon, Inc.,* No: 95-2405-EEO, 1996 U.S. Dist. LEXIS 21824 (D. Kan. Oct. 17, 1996); *Bd. of Trs. v. Tyco Int'l. Ltd.*, 253 F.R.D. 521 (C.D. Cal. 2008); *Robert Bosch LLC v. ADM 21 Co.*, No. 2:10-CV-1930-LRH-(LRL), 2011 U.S. Dist. LEXIS 102639 (D. Nev. Sept. 12, 2011); Stipulated Protective Order (ECF No. 38), particularly ¶¶ 1, 6, 20, 21 (addressing third-party issues) *see also* Northern District of California Patent L.R. 2-2 ("Discovery cannot be withheld on the basis of confidentiality absent Court order.").

elements);[18] licensing (i.e., licensing technology that meets the patent claim elements);[19] and testing;[20] and that indirect infringement can exist for common technology licensor conduct of designing, licensing, and supporting (e.g., providing instructions, technical consultants, technical

---

[18] *ePlus, Inc. v. Lawson Software, Inc.*, 789 F.3d 1349, 1361 n.13 (Fed. Cir. 2015); *National Presto Indus. v. West Bend Co.*, 76 F.3d 1185, 1195 (Fed. Cir. 1996) (quoting the *Weyerhaeuser* language provided in the following citation); *Weyerhaeuser Timber Co. v. Bostitch, Inc.*, 178 F. Supp. 757, 760 (D. R.I. 1959) (stating, "And even though the grant of said license and *the delivery of said designs and patterns* [emphasis added] occurred before the date of the reissue patent, such acts would constitute infringing conduct if they were performed with intent to infringe the forthcoming reissue patent or with intent that said infringing conduct would continue after the reissue patent was granted. [Citations omitted]."); *Hewlett Packard Co. v. Papst Licensing GmbH & Co. (In re Papst Licensing GmbH & Co.)*, 767 F. Supp. 2d 1, 10 (D. D.C. 2011) (stating, " Underlying the customer-suit doctrine is the preference that infringement determinations should be made in suits involving the *true defendant, the party that controls the product's design* [emphasis added], rather than suits involving secondary parties, such as customers of the manufacturer."); *Oticon, Inc. v. Sebotek Hearing Sys., LLC*, 865 F. Supp. 2d 501, 509 (D. N.J. 2011) (stating, "[I]t is the *design* [emphasis added], . . . , and . . . of allegedly infringing products that gives rise to any infringement claim[.]"); *Symbol Techs., Inc. v. Metrologic Instruments, Inc.*, 771 F. Supp. 1390, 1403 n.11 (D. N.J. 1991)     (holding direct infringement was proper where an individual "participated in *the design of* [emphasis added] the infringing device and preparation of the sales bulletin. [Citation omitted].").

[19] *National Presto Indus. v. West Bend Co.*, 76 F.3d 1185, 1195 (Fed. Cir. 1996) (quoting the *Weyerhaeuser* language provided in the following citation); *Weyerhaeuser Timber Co. v. Bostitch, Inc.*, 178 F. Supp. 757, 760 (D. R.I. 1959) (stating, "And even though the *grant of said license and the delivery of said designs and patterns* [emphasis added] occurred before the date of the reissue patent, such acts would constitute infringing conduct if they were performed with intent to infringe the forthcoming reissue patent or with intent that said infringing conduct would continue after the reissue patent was granted. [Citations omitted]."); *Moseley v. United States Appliance Corp.*, 155 F.2d 25, 27 (9th Cir. 1946) (stating, "The *act of licensing* [emphasis added] . . . to manufacture and sell the infringing device was itself an act of infringement. [Footnoted citations omitted]. . . . The evidence shows that Keelmo Company was formed for the purpose of infringing appellee's patent *by licensing* [emphasis added] the manufacture and sale of the infringing device.").

[20] *Paper Converting Machine Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 18, 19 (Fed. Cir. 1984) (stating, "[I]f the infringer has tested his embodiment of the invention sufficiently to satisfy him, this may be may be a[n] [infringing] 'use,' because [ . . . ] 'use' includes use for the purpose of testing."); *Kumar v. Ovonic Battery Co.*, 351 F.3d 1364, 1372–3 (Fed. Cir. 2003)  (noting in part, in denying summary judgment of non-infringement, the defendant's use by performing experiments); *Oticon, Inc. v. Sebotek Hearing Sys., LLC*, 865 F. Supp. 2d 501, 509 (D. N.J. 2011) (stating, "[I]t is the design, *implementation* [emphasis added], manufacturing, marketing, and sales of allegedly infringing products that gives rise to any infringement claim[.]").

5

phone support).[21]

---

[21] *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) (stating, "*design of* [emphasis added] infringing product may constitute active inducement" [citing 4 D. Chisum, *supra*, § 17.04[4][d], at 17-52]); *id.* (noting, as support for induced infringement finding, the defendant had "given all of the [infringing material] *formulas* [emphasis added] to" the direct infringer); *id.* (noting, as support for induced infringement finding, the defendant had "exerted control over [direct infringer] manufacture of the infringing [materials], as the owner of the trademark POCKET PURIFIER used by [direct infringer] on its product and through license agreements. *See* Amendment to Agreement between William J. Gartner and Calco Ltd. of Sept. 24, 1980, at 2 (Jan. 26, 1983) ('GARTNER grants to CALCO an exclusive license to manufacture and sell the purifying straw, *the construction of which shall have been approved by Gartner* [Court's emphasis]')."); *Fromberg, Inc. v. Thornhill*, 315 F.2d 407, 411 n.11 (5th Cir. 1963) (stating, regarding inducing infringement, "'The following has been adjudged infringing conduct: *licensing others* [emphasis added] to use infringing machines and processes * * *; fitting machinery for operation at the purchaser's plant; * * * converting machinery or adjusting operating parts * * *; passing on information intending to bring about infringement, ( Jones v. Radio Corp. of America, 131 F.Supp. 82); *Furnishing drawings and granting license* [emphasis added] ( Weyerhauser Timber Co. v. Bostich, D.C., 178 F.Supp. 757, accused machines, Conmear Products Corp. v. Tibony, 63 F.Supp. 372); . . .' [Citation omitted]. The cited Jones v. RCA case gives a good summary of pre-1952 Code decisions as to acts inducing infringement even without sales."); *Csb-System Int'l Inc. v. SAP Am., Inc.*, No. 10-2156, 2012, U.S. Dist. LEXIS 60909; 2012 WL 1521321, at **26, 28 (E.D. Pa. Apr. 30, 2012) (stating, "Courts have found the range of infringing acts to include actions such as support services and repair. [Citations omitted]; *Symbol Techs., Inc. v. Metrologic Instruments, Inc.*, 771 F. Supp. 1390, 1405 (D.N.J. 1991) (finding that acts of repair and maintenance [ . . . ] may lead to liability for inducement; and further noting that 'conduct including *licensing* [emphasis added], repair and maintenance, instruction and advertising, *design* [emphasis added] and . . . have been sufficient to hold one liable for'" inducing infringement); *Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398, 434 (S.D. N.Y. 2011) (finding defendant "'materially contributed' to the infringement by *designing* [emphasis added], . . . , supporting, and . . . the [infringing] program. [Citations omitted]"); *ProteoTech, Inc. v. Unicity Int'l, Inc.*, 547 F. Supp. 2d 1174, 1178 (W.D. Wash. 2008) (stating, "Here, in contrast, ProteoTech alleges that Rexall had a subsidiary relationship with the company that through various acquisitions became part of the corporate entity now accused of infringing the patent ProteoTech licensed to Rexall. The case now before the Court is simply not one in which the alleged inducer had no connection to the alleged infringer, and Rexall's *'mere licensing' theory* [emphasis added] does not support dismissal of ProteoTech's claim of patent infringement."); *Alta. Telecomms. Research Ctr. v. Rambus, Inc.*, No. C-06-02595 RMW, 2006 U.S. Dist. LEXIS 81093, at **14–15 (N.D. Cal. Oct. 24, 2006) (find that pleading of product testing and other services offered along with licensor's licenses and that the technology infringed specific patent claims sufficiently met indirect patent-infringement pleading standards); *Vesture Corp. v. Thermal Solutions, Inc.*, 284 F. Supp. 2d 290, 317 (M.D. N.C. 2003) (noting that inducing infringement may be based on designing of a product).

The monetary information relating to the Accused Instrumentalities are relevant and discoverable. Defendants' objections to Requests include Requests Nos. 1, 2, 6–8, 11, 16–19, and 44 should be overruled, and Defendants should be ordered to produce all responsive documents.

### (2) Defendants Should Be Compelled to Provide Complete Production Regarding Infringing-Conduct Information.

In response to requests for production relating to infringement (making, selling, offering to sell, use, importation, and exportation) information relating to the Accused Instrumentalities,[22] Defendants asserted meritless objections and failed to fully produce responsive documents and, instead, have produced little responsive information. The Requests include Requests Nos. 20–23, and 25.[23]

Defendants' "General Objections"[24] are improper.[25] Likewise, Defendants' boilerplate objections[26] are waived by their boilerplate nature. [27] Further, the existence (here, Defendants assert there "may" be confidentiality obligations to third parties) of third-party confidentiality

---

[22] The precise nature of each request is set forth by the language of each request. Simply for brevity and convenience of the Court, Plaintiff refers to these requests as "requests for production relating to infringement (making, selling, offering to sell, use, importation, and exportation) relating to the Accused Instrumentalities." However, Plaintiff's use of such category descriptor is not intended to modify or restrict each request; each request's language sets forth its precise scope. Further, some Requests may pertain to more than one category descriptor used by Plaintiff in this Motion and though for brevity and simplicity purposes Plaintiff's Motion addresses each Request only with regards to a single category descriptor, by doing so Plaintiff does not intend to modify or limit the scope of any Request as set forth by each Request's language.

[23] *See* Ramey Decl. at ¶3, RFP Responses (Ex. 1) at 22–25, 26, 27.

[24] *See id.* at 3–6.

[25] *ACMA USA*, 2008 U.S. Dist. LEXIS 51636, at *5; *Anglin*, 2006 U.S. Dist. LEXIS 28606, at *2, *3; *Doerge*, 2006 U.S. Dist. LEXIS 15717, at *9; *Koresko*, 2004 U.S. Dist. LEXIS 19904, at *8–*10; *Biovail*, 217 F.R.D. 380, 381–83; *In re Aircrash Disaster near Roselawn*, 172 F.R.D. 295, 306, 307; *Burns*, 164 F.R.D. 589, 592, 593.

[26] *See* Ramey Decl. at ¶3, RFP Responses (Ex. 1) at 23–25 (responses to Requests Nos. 20–23), 27 (responses to Request No. 25).

[27] *E.g.*, *Enron*, 258 F.R.D. 149, 159; *Hager*, 267 F.R.D. 486, 498.

obligations is not a proper basis for objecting and withholding discovery.[28]

The infringement (making, selling, offering to sell, use, importation, and exportation) information relating to the Accused Instrumentalities is relevant and discoverable. Defendants' objections to Requests Nos. 20–23, and 25 should be overruled, and Defendants should be ordered to produce all responsive documents.

## C. DEFENDANTS SHOULD BE COMPELLED TO PROVIDE COMPLETE ANSWERS TO CERTAIN INTERROGATORIES.

### 1. Defendants Should Be Compelled to Fully Answer Interrogatory No. 6, Which Relates to Accused-Instrumentalities' Monetary Information.

Plaintiff's Interrogatory No. 6 asks:

**INTERROGATORY NO. 6:**

For each Accused Product, state, on a product-by-product basis, the revenues received, costs incurred, and profits received, relating to sale or use in the U.S. or export from the U.S. of such product since January 1, 2010. The information should be provided at the unique product number level and may be provided on either a monthly or a quarterly basis as is likely reflected in reporting packages distributed to Defendant's management on a periodic basis in, for example, profit and loss statements or income statements, balance sheets, statements of cash flows, revenue forecasts, profit forecasts, demand forecasts, market share reports or forecasts, or similar reports. To the extent such information is not available, Defendant shall provide revenue, cost, and profit information at the most detailed level reasonably available to Defendant.[29]

---

[28] *Mike v. Dymon, Inc.,* No: 95-2405-EEO, 1996 U.S. Dist. LEXIS 21824 (D. Kan. Oct. 17, 1996); *Bd. of Trs. v. Tyco Int'l. Ltd.*, 253 F.R.D. 521 (C.D. Cal. 2008); *Robert Bosch LLC v. ADM 21 Co.*, No. 2:10-CV-1930-LRH-(LRL), 2011 U.S. Dist. LEXIS 102639 (D. Nev. Sept. 12, 2011); Stipulated Protective Order (ECF No. 38), particularly ¶¶ 1, 6, 20, 21 (addressing third-party issues) *see also* Northern District of California Patent L.R. 2-2 ("Discovery cannot be withheld on the basis of confidentiality absent Court order.").

[29] *See* Ramey Decl. at ¶5, Interrogatory Responses (Ex. 3, which is being FILED UNDER SEAL) at 46.

Defendants' "General Objections"[30] are improper.[31] Likewise, Defendants' boilerplate objections[32] are waived by their boilerplate nature.[33]

The accused-instrumentalities' monetary information is relevant and discoverable. Defendants' objections to Interrogatory No. 6 should be overruled, and Defendants should be ordered to fully answer Interrogatory No. 6.

Plaintiff's e-mail of July 25, 2018, particularly lies out the damages data requested.[34] The discovery of such information from Defendants may lead to the discovery of admissible evidence. Additionally, Plaintiff is entitled to the raw data from which Defendants computer the sales data.

The information requested in the e-mail was:

For each Accused Product, state, on a product-by-product basis, the revenues received, costs incurred, and profits received, relating to sale or use in the U.S. or export from the U.S. of such product since January 1, 2010. We have received none to date.

A proper response includes revenue data for each:

Nokia Eden-NET SON refers to each of Eden Rock's Eden-NET SON and Nokia's iSON.

(a) any transceiver and antenna made, used, or sold by Nokia capable of RF communication with a wireless network, the network including a computer executing or loaded with Nokia Eden-NET SON;

(b) any wireless communication device made, used or sold by Nokia, capable of RF communication with a wireless network, the network including a computer executing or loaded with Nokia Eden-NET SON;

(c) any computer made, used or sold by Nokia, including a virtual computer, executing or loaded with Nokia Eden-NET SON;

(d) any wireless communication device made, used or sold by Nokia, capable of RF communication with a wireless network, the wireless

---

[30] *See id.* at 1–5.

[31] *ACMA USA*, 2008 U.S. Dist. LEXIS 51636, at *5; *Anglin*, 2006 U.S. Dist. LEXIS 28606, at *2, *3; *Doerge*, 2006 U.S. Dist. LEXIS 15717, at *9; *Koresko*, 2004 U.S. Dist. LEXIS 19904, at *8–*10; *Biovail*, 217 F.R.D. 380, 381–83; *In re Aircrash Disaster near Roselawn*, 172 F.R.D. 295, 306, 307; *Burns*, 164 F.R.D. 589, 592, 593.

[32] *See* Ramey Decl. at ¶5, Interrogatory Responses (Ex. 3) at 46, 47.

[33] *E.g.*, *Enron,* 258 F.R.D. 149, 159; *Hager,* 267 F.R.D. 486, 498.

[34] *See* Ramey Decl. at ¶6, Ex 4, July 25, 2018 e-mail from Ramey to Nokia's counsel.

> communication device including a processor executing or loaded with a Location-Based Service (LBS) provider application, such as Google Maps or VZ Navigator application or AT&T navigator;
> 
> (e) revenue data from the use, make or sale of Nokia Eden-NET SON; and,
> 
> (f) licenses for using, making or selling Nokia Eden-NET SON.
>
> Traxcell intends to compel these responses. Nokia's reference to NOK_TRX00051216 does not help as these numbers do not include all of the equipment.[35]

The information requested is taken directly from Plaintiff's infringement contentions[36] and therefore extremely relevant to Plaintiff's infringement claims.

Defendants' "General Objections"[37] are improper.[38]  Likewise, Defendants' boilerplate objections[39] are waived by their boilerplate nature.[40]

## II.  CONCLUSION

Plaintiff requests the Court overrule Defendants' discovery objections referenced above and order Defendant to provide full production and answers to the discovery discussed above.

Respectfully submitted,

**Ramey & Schwaller, LLP**

By: /s/ William P. Ramey, III
William P. Ramey, III
Texas Bar No. 24027643
5020 Montrose Blvd., Suite 750

---

[35] *See* Ramey Decl. at ¶6, Ex 4, at 1–2.

[36] *See id.* at ¶7.

[37] *See id.* at ¶5, Ex 3 at 1–5.

[38] *ACMA USA*, 2008 U.S. Dist. LEXIS 51636, at *5;  *Anglin*, 2006 U.S. Dist. LEXIS 28606, at *2, *3; *Doerge*, 2006 U.S. Dist. LEXIS 15717, at *9;  *Koresko*, 2004 U.S. Dist. LEXIS 19904, at *8–*10;  *Biovail*, 217 F.R.D. 380, 381–83; *In re Aircrash Disaster near Roselawn*, 172 F.R.D. 295, 306, 307;  *Burns*, 164 F.R.D. 589, 592, 593.

[39] *See* Ramey Decl. at ¶5, Ex 3, Interrogatory Responses at 6, 7.

[40] *E.g.*, *Enron,* 258 F.R.D. 149, 159; *Hager,* 267 F.R.D. 486, 498.

Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)
wramey@rameyfirm.com


**Hicks Thomas, LLP**

John B. Thomas (Co-Counsel)
Texas Bar No. 19856150
700 Louisiana Street, Suite 2000
Houston, Texas 77002
(713) 547-9100 (telephone)
(713) 547-9150 (fax)
jthomas@hicks-thomas.com

**Attorneys for Traxcell**

### CERTIFICATE OF CONFERENCE

Numerous personal conferences have occurred in this case regarding this production between Plaintiff Counsel William P. Ramey, III and Defense Counsel Marc Kaplan. Both conferred by emails on July 25th, and August 6th, 13th, and 17th, 2018. Also, on July 26th, those attorneys conferred by phone. Agreement could not be reached because the parties could not agree on the scope of discovery and the relevance of the discovery requests. Local counsel, Mike Jones, for defendant was involved in the telephone conference and in subsequent e-mails.

The parties have continued to negotiate the requests but no further progress has been made on obtaining the requested discovery. The conferences continued until a meet and confer today, February 11, 2019 involving local counsel. No agreement could be reached.

/s/ William P. Ramey, III
William P. Ramey, III

### CERTIFICATE OF SERVICE

11

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that all counsel of record who have appeared in this case are being served today, February 11, 2019, with a copy of the foregoing via the Court's CM/ECF system.

/s/ William P. Ramey, III
William P. Ramey, III
